*46
The counselfor the plaintiff in error presented a petition for a re-hearing as follows:

There has certainly been great injustice done to the plaintiff in error. He does not owe Hutchings one cent, as we verily believe; and it is earnestly hoped, that on a re-examination of the record, the court will find abundant cause for a reversal of the judgment, and ordering a new and fair trial of the cause.
It has been held by the court, that the account of Hutchings against Crowdus, with the statement annexed by Crowdus, that that account was entitled to a certain credit, was admissible under the counts of insimul computassent. And it is perfectly plain it could not have been admitted under any other count. But it is respectfully urged that the account and an-_ nexed statement, on being again examined, will be found clearly inadmissible at-this door.
In the first place, neither of the counts of££insimul computassent,” (for there are "two of them) agree in amount with the balance which it would seem was found, as Hutchings contends, against Crowdus on the accounting; and the variance must be fatal. '
The first count states that Crowdus was found $1643 61 in arrear; and in the second count, the balance is stated at $1973 50. Now the account exhibited for the purpose of proving the accounting, shews the total sum of $1968 against Crowdus; a *47 sum not agreeing with either count. And the sum stated by Crowdus as the amount he was entitled to credit for, was $330 89, which deducted, leaves balance of $1637 11; a sum still different from any named in the declaration.
Petition fora re-hearing.
It cannot require an authority to prove that when the plaintiff goes on his account stated, or his certain sum agreed on as the balance in his settlement, he must prove his case as he states it. He may after-wards recover less, if he proves the balance as stated; but if he does not succeed in this, he fails for the variance, and the evidence ought to be excluded. Even without the variance, it was believed with great confidence, that the account was inadmissible. It is stated by Crowdus, that there had been a settlement between him and the plaintiff, but not of the accounts found on the paper; and he says there was a balance found, not against him, but in his favor, for the sum of $330 89; and hé says this account of the plaintiff against him, was to be credited by that sum. But does this prove the account was settled? No merchant or accountant in the country would say so; and such is not the import of the terms; they only say this, “Our other accounts have been settled, and shew that you, Dr. Hutchings, owe me $380, which may be credited on this account; but as to this we have not settled.”
It is exceedingly questionable whether these accounts and endorsement have not been shuffled in some very improper manner, so as to present the case in even this equivocal character. And surely it ought to bea strong case to authorise a judgment on such a pretended accounting together, without proof of either contract or consideration.
Because if this account, (this paper we mean) was Competent, it-was just as good without the other evidence as with it. But without this paper was evidence, the plaintiff below did not give testimony conducive to prove one half of the amount he recovered.
But the amount recovered, was certainly too great even if the account was correct, as admitted in evidence. The amount stated at the foot of the account, as we have said above, was $1968; and the *48 credit was just 330 89, leaving the balance of $1637 * * apparently, and for this sum precisely, the verdict was rendered. But there was a large amount of the account, consisting of a number of items, erased or stricken out. When this was done, cannot be important; if before the alleged acknowledgment by Crowdus, then Im admitted the other items only; if at the time of the settlement, then these items were excluded by the insinml computas sent, and the balance agreed on; or if these erasures were made afterwards by Hutchings, then the whole paper ought to have been excluded. These stricken out items, are for the following amounts, viz: $8 50, $1 25, $2 50, $15 25, $12, and $15 17; amounting in the whole, to the sum of $54 67.
Petition fora ¡p- earing,
But since making the foregoing calculation, we have looked farther into this account; and the apparent additions are nearly all found but little better than guess work; scarcely one addition correct. In the two last additions, for example, one consisting' of three and the other of four lines, and both are wrong; one for $1, and the other for $95.
Now it appears by those two palpable errors, the verdict is $96 too great. And is this the insimid eomputassent that is to bind our client?!! The jury went by it, or rather by the amount they found at the bottom, to a single cent. But the items and amount of the account, were never understood as so much of claim or active demand against Crowdus. Two of the items are for “cash paid said Crowdus;” and does not this import that Hutchings owed him? A negro girl, Cate, is next charged, and then four recent lost or destroyed, and we suppose for money due. And then comes “errors at sundry times.” Crowdus held a mortgage on Iiutching’s slaves and horses at that time, and it is expressly proved that the brick house, purchased from Hay, was bought for Crowdus; and as to the'great number of items, consisting of merely the name of a man with dollar's and cents attaching to them, we can tell neither head nor tail of them. But this the court must be satisfied of Crowdus was wronged^ sixteen hundred and odd dollars!L
Petition for a re-hearing
But the evidence of Todd ought certainly to have been received. It is impossible, and the court does not believe from the record, that this testimony offered before Stratton and Curd were examined. When was exception to the reception of Todd’s evidence presented? Not during the trial, but after it was over and all closed. Regularly, the exception ought to have been made during the trial, and at the moment of rejection; at the stage in the.cause when the event transpired. If the court will presume ou this subject, they must take this presumption; and if so, the evidence was presented at the last. Besides, it is against the natural order of things, to suppose that it was introduced before plaintiff’s evidence attacking the receipt was introduced.
The history of the record is, that the plaintiff gave in evidence of his supposed settled account; then closed. — The defendant his receipt, after proving it by the subscribing witness, and he closed. So far, there could not be the least need of the evidence of Todd. The plaintiff next brought on his attack ou the receipt, by a host of witnesses. — Next, the defendant his supporting evidence. Till the genuineness of the receipt was attacked, there was no call for defence. Then, and not till then, if common sense is presumed to be the guide in the law, could the supporting evidence be introduced. The exception is after all the evidence is written, and why is it not stated in this exception, the moment of time as well as the preceeAing evdidence? The answer is obvious. The evidence was previously placed. • on the record, and it was unnecessary; and.it was for this reason that the exception is silent.
The inferior courts are always ready to give their reasons, and if this evidence was offered and rejected, because it was an improper moment, how ready would the Judge have been, to have stated it. If the cause of the rejection of Todd’s evidence was, ■that the plaintiff’s evidence against the receipt had not been then given, it would certainly have been afterwards presented. Instead of this, he placed the exception after all the evidence.
But the view taken by the dissenting Judge has no answer. It may be enlarged. Remember that *50 often when a witness has been introduced, and a question asked, that question indicates what answer is wanted; and on objection, the witness is not perinitted to answer at all; the evidence is excluded before it is heard. On other occasions, the witness is heard, and his story told; and thus to get clear of the evidence, the objector has to move the court to withdtaw it, or to tell the jury to disregard it. This latter course was followed in this instance. The witness was heard, and his testimony given, and the court withdrew it, and directed the jury to take it out of the amount before them.
Petition for a re-bearing.
Now suppose this to have been done before the witness fpr plaintiffs was heard. Afterwards the witness for plaintiffs was introduced. Ought not the court then to have told the jury, the first decision was withdrawn, and Todd’s evidence left with them for what it was worth? Certainly, if the court did not, it was grievously wrong. Did the court do this! The record is conclusive that it did not; for the court certifies all the evidence, and in that all, excludes Todd’s. The court then, is convicted of withdrawing from the jnrv, the full weight of Todd’-s evidence, and this is conclusive.
Such a reason for disregarding a bill of exceptions, as to the admission of the evidence, has never heretofore been adopted by this court. The inquiry when the whole issue and evidence has been certified, has been: Was the evidence rejected pertinent to the issue and oirnmnstances proved? If so, arevisal took place, and the evidence was let in, unless the court itself shewed that the evidence was offered at an improper moment. The reason of this rule is apparent. If the court affirms, the appellant loses forever, the benefit of his evidence. When, if it is reversed, the benefit of the evidence is had, and if the other is able to rebut or disprove it, he is not injured, and the trial is fair. If he is not, then he ought to be bound by it, and the rights of the appelant are preserved, and he is not caught in a snare.
While courts presume in favor of the court below, they also presume that counsel below has acted according to the rules of common sense. But the court has given a reason for withholding a reversal, *51 which, we trust will, for the sake of legal principles, be withdrawn. It is this: We are satisfied that had Todd’s evidence been admitted, it ought not to have produced a different result. This is the opinion of the court, but the parties and court below, thought differently, else one would not have introduced it, the other objected, and the court have set it aside. Who has a right to settle this difference, and determine on the weight and effect of this evidence? Not this court, hut the jury exclusively; and yet this court has assumed the-right to decide it!
Petition for-a re-hearing,.
Ought this court to say that when pertinent evidence is rejected, it is no injury, there was enough to have overturned it if it had been let in; or if improper evidence to prove a fact is admitted, it made no diffeeence, for there was proper evidence enough to prove the same fact without it? Yet this court has said so.
To shew the court how careful this court has been on this subject, we report the case of Brooke vs. Clay, III Marshall, 550. There, improper evidence, hearsay, .and reputation was admitted to prove the place of nativity, and excepted to. Afterwards, during the progress of the cause, abundance of proper evidence was admitted or introduced, proving the same fact; yet this court reversed for that cause alone, because it could not be told whether the proper, or the improper evidence, had the most weight, or whether the jury took both together, and the finding must be on the proper evidence alone.
- How easy would it have been, to have said as the court has done here, the description of this evidence made no difference, especially as the exclusion of it would, and “ought not” to have made a different result? The court, however, thought this assumption an unsound one; yet the court has carried out a much stronger decision on evidence, by depriving a party altogether of it, and then saying, this deprivation makes no difference, for the party ought to have been defeated with or without it. This is placing strong reliance upon the evidence of the plaintiff, when he attempts to prove his confessed handwriting a forgery.
Here we cannot help observing, that the great mass of the plaintiff’s evidence on this point, was *52 composed of incompetent evidence — the opinions of witnesses alone.
Peiition for a re-hearing.
Now we assert without fear of contradiction, that opinions of witnesses, not on the handwriting, but u.p0n j.nks or kinds of inks, shape of paper, and what had been, or was-probably attached to the paper, was wholly incompetent, and for this we refer, both to Philips and Starkie, on the admissibility of opinion.
Shall this opinion then, be so strong as to render Todd’s evidence of no weight? Indeed,- when the question is between genuineness and forgery, we do insist that Todd’s testimony is not improper. The forgery implies that the defendant secretly manufactured the evidence to defend the case. The circumstance that the same evidence had been seen and inspected months before, in its present state, is calculated to repel this implication or presumption. To this it may be answered, that the document might have been manufactured before Todd saw it. This is possible but the probability is overturned by the fact of its existence at a former period. But whether this- be correct or not, the facts known by Todd, were material in the whole case. The court admits its relevancy and pertinence, if offered at a proper hour; and although this court has said, “if heard it was not sufficient;” yet we do contend that the jury, and not this court, have the right to say this. The discovery of new evidence is, ground, if pertihent, to grant a new trial; and when was it heard that a court refused to grant a new trial, on the discovery of relevant testimony, by assuming, that if heard, it would not be sufficient when so heard?
The majority of this court seems not to have attended to this part of the record. The defendant moved for a new trial. One of the grounds is, that the court below had admitted improper evidence for plaintiff, and excluded proper evidence for defendant. What proper evidence? Why that of Todd. Here the mind of the court below, must act on all the evidence, and the court had heard Todd’s evidence, and knew its relevancy; and also knew that it was rejected, and that it conduced, in some degree, (we cannot say how slight,) to produce a different *53 result, and yet the court refused to give a new trial, to let this evideaice in its proper place. There is no escape from this, even if it be supposed that the evidence was rejected because it was offered at au improper moment.
Monroe, Mills, and Broton for defendant.
We will further observe that we are in strictness entitled to a new trial. We had no oppoa’tuaaity of meeting or seeing the arguments of our adversary in the cause, although we find it there now. It is an unbending rule, that such arguments shall not be used, unless submitted to the adverse counsel, yet our advea-saries have taken a different course, and have been heard exparte. Tlais is an exceedingly inconvenient practice. Not 'supposing it would be proper to acquiesce in the practice of allowing counsel to preseaat arguments to the court, never seen or heard by the adversary' counsel, one of the counsel of the plaintiff in error, has declined looking into the argument of the defendant’s counsel. Its existence was never heard of until since the opinion of the court was delivered.